I'm here on behalf of the appellant, retired law enforcement officer Camille Burban. Recently appointed Judge Kavanaugh, or Justice Kavanaugh, in the Supreme Court had it right when he joined the majority in the Dewberry opinion. And what a delight it is to overrule the Supreme Court justice on occasion. Your Honor, as the Court is well aware, that is the only circuit court that's weighed in on this issue, and we are in recognition that there are several lower court opinions against us, including the one in this case, but it's our submission that . . . is against you except that one, is it not? That's correct, Your Honor. And there are a bunch of them. That's correct, but it's our position that Justice Kavanaugh had it right, and that the weight of authority, given who was on the panel and the fact that it was an appellate court, is what should be followed. That said, before discussing the specifics, I know the Court's generally aware of the facts and the applicable law here. There's one thing to remember, and it's really, what is this case about? Congress has passed a statute giving qualified, retired law enforcement officers like Ms. Bourbon the right to carry a firearm. So what are we fighting over here? What we're fighting over is whether states can be forced to provide these cards to implement the federal program. Right. And the anti-commandeering decisions are pretty darn strong. I understand that, Your Honor, but what we're talking about really is a piece of plastic from the department saying nothing other than she worked there. We're not asking . . . No big deal. Won't be difficult for them to do what they have, right? Excuse me? Your position is, and the position of Justice Kavanaugh's panel, he didn't write it, is that that's no big deal. It won't be much of a burden. It's a minimal effort on their part. Therefore, no violation of anti-commandeering. You're right, and they're already doing it. Florida law has long . . . That same argument was made in Prince, wasn't it? Well, Prince, what was required in Prince was a lot more . . . But the argument was made that it's just minimal, and the Supreme Court said minimal has nothing to do with it. We're talking about federalism here, and there's no such thing as a little bit of an injury to federalism. I understand that, Your Honor. What I want to say is it's more than just is it minimal. It's voluntary. They're already doing it. There's long been a Florida statute on the books . . . Well, it's not voluntary. We wouldn't . . . I mean, if it were voluntary, we wouldn't be here. They've refused to do it in this case, and you've sued them for not doing it and asked us, among other things, to allow you to have damages and an injunction forcing them to do it, and that's not voluntary. That's correct, but the point is they were giving these out before this act was put in, and the state of Florida has passed a statute implementing this act. But not to your satisfaction. The 1510 year, for example. Right. Well, that's the local agency that has one that conflicts with what the federal statute . . . I know, but you want a declaration they can't do that. That's correct. Well, then they haven't been voluntarily doing this then. All the defendants haven't been voluntarily doing what you're asking us to have them do. That gets back to can an agency or a state stand in the way of a federal program, if you will? Or can the agency or state just simply say, we don't have anything to do with it, that's a federal program, do it yourself? Well, but here's the thing. They've already been engaging in it, Your Honor. Then there's no problem. You've got the relief you want. They're voluntarily providing it. Come on, counsel. You're asking us to use the power of the federal court, federal branch of government, to require them to do something they are not now doing, and you can't call that voluntary. Well, if you go to Reno v. Condon, for example, the DPPA case, the court came in there and said, all right, you have to not give it over in these circumstances. You have to give it over in these circumstances. If you enter the market and you're providing this, you've got to follow federal regulations, and the federal regulations are don't violate people's privacy, which is a national concern, a legitimate source of federal regulation. Don't violate people's privacy, no matter who you are, private individual, internet hacker, or Bureau of Motor Vehicles. I mean, isn't that the distinction between that case and this case? Well, I think it's the same from the perspective, what are they doing? There's a federal scheme in place, and there's going to be some state action that has to help implement the scheme. Not really. I mean, the state action is thou shall not. Don't give this information out. Right, and what you have here, Your Honor, is we're not hearing anything from Neptune Beach or any other state or anything saying, we don't believe Leosa's the law. We're not even going to deal with Leosa, and they give these cards out. In fact, I mean, this is outside the record, but we've had discovery here. They give these cards out to other officers that have engaged in theft. So they're not saying Leosa we have a problem with, just as it relates particularly to Camille Bourbon, who we've alleged is qualified under the statute. We're not going to give it to her. And I think it's a far leap to say that this is like Prince, where you're requiring municipalities or states to undergo these extensive background checks and whatnot before you do that. There is no background check here. They know it's historical. They know if they work there or not. And then you just issue the card and she goes on. And if you look at the other requirements of the statute, such as the firearms requirement, it says at the individual's expense. It's not even asking that the state or the municipality pay for anything. So when they're already involved in this and they're already implementing this legislation, Why don't you sue under state law, then? Sir? Why don't you sue under state law if you say there's a Florida statute? Because it's our contention based on Dewberry that it's a federal right that they're denying her. Let me ask you this also. It seems to me, and your client already has the firearm certification. Yes, sir. It seems to me that there is no requirement in the alternative D-2 where all you have to get is the photo ID from the former agency. There's no requirement that that photo ID be a current photo ID. So it seems to me that most former law enforcement officers would already have such a photo ID that was issued during their employment. That may be another reason that Congress didn't require, if it could under the anti-commandeering laws, that there was no need to so require. And in fact, when Congress saw there was a problem with some local agency, they made specific provision for alternative ways to get the firearm certification, not the photo ID. Two things from that, it seems to me. Number one is if Congress thought the photo ID or the firearm certification was a requirement, if they were commandeering the state to do those things, they wouldn't have provided alternative ways. They would have just said, you've got to do it. And the fact that they gave alternative ways for the firearm certification but not the photo ID is a pretty clear indication to me that Congress did not even intend to require the states to provide or the cities to provide the photo ID. It may have been assumed it was a given that you may have one already. I don't believe Ms. Bourbon does have an ID anymore from having worked there, and I can't say it's in the record whether or not they make you turn your ID back in when you leave there. I know that I've seen IDs from officers at that department that say, you know, retired. And that's where I want to get back to is we're not asking that the department certify anything. We're not asking the department certify that she's a qualified law enforcement officer under the statute. In fact, if you look at the Florida statute and the administrative regulation as it relates to the firearms requirement, the last subsection of the administrative regulation says, all we're doing is saying you met the firearms requirement. We're not warranting that you're qualified for any other purpose other than you did that. And that's what I'm saying here. We're not asking for a card that says, all right, Neptune Beach, look at everything else, say she's a qualified law enforcement officer under the various prongs of the statute. It's simply a card saying she worked there. And that's the basic premise here. Why doesn't the federal government check all that out itself? There's an army of retired FBI, DEA, Defense Department investigators who regularly contact us about someone who's applied for some position. And they want to know, they work for you. Are they okay? Were they separated amicably? And so forth and so on. Why doesn't the federal government just do that itself? Well, I think because the expense is much more minimal if they go to the actual agency. Are they shifting the burden to the states? That's a textbook violation of the anti-commandeering provision, doctrine law. Any federal program, as I believe it's said, Reno and Alston, South Carolina versus Baker, is going to put some imposition on the state. Any federal program. Really? Any federal scheme that requires something is going to have the state having to do something to kick it into play. And it's important to remember here, it's not, they're already doing it. They're already doing it, and for some reason in this case it presented a problem. We're asking because it's minimal, because the state is voluntarily participating in it, because Neptune Beach is already doing it. This is the only case, Mr. Burwell, the only case you know of where this hasn't been done. On these facts, on these facts. These facts, there are other facts that concern you? Well, I mean, you've got other cases where the state was hindering, all right, are you qualified enough to take the firearms test? That was one of the issues that popped up in Dewberry. But I'm talking about a case purely where she checks every one of the boxes. There's no dispute that she checks all the boxes when we face a complaint, other than just having the card saying, I worked there. Not that I was qualified or anything, just I worked there. I thought they had to issue those cards. I thought under the federal program they couldn't issue those cards if various things existed, or at least didn't have to. For example, mental problems, right? How does that work? The state, somebody else in another case, not this government, comes and says, I want a card. And they know that person has had serious problems and they were happy to see him go. Do they have to issue a card under this law? Under that scenario, they're not a qualified law enforcement officer because they have a mental defect issue. But the person, agency, entity that makes that decision on the federal program is the state, correct? That's correct. So isn't that a burden? Some people have anger management problems. Who knows if that's mental? Who knows it's not? But this little bitty burden puts it on the state to make a determination about whether somebody fits within that language about mental difficulties in a federal statute. I have to concede that it's on the state. Otherwise, I don't know how I'd put it any other way. I don't want to be disingenuous. What I'm saying is, on our case, where we've alleged in the complaint that she meets all of those factors, being that she doesn't have a mental problem, she's not an alcoholic, all those things. When you meet all that, plus you've met the state firearms requirement, simply to ask for an ID saying you work somewhere, that's not the type of federal conscription that depends on that. All right. We'll hear from Mr. Plotkin and give you your five minutes to reply. Mr. Plotkin. May it please the court. Good morning, members of the panel. My name is Rick Plotkin, and I have the pleasure of representing the city of Neptune Beach in this matter. As I'm sure the court is aware, and, in fact, it's been discussed in detail already this morning, this is a case of first impression within this circuit. But as the court has also pointed out, this is not the first time that this issue has been addressed by the judiciary. Appellant correctly cites to the Dewberry case in the D.C. Circuit Court of Appeals for the presumption that Section 1983 or LEOSA has a federal right under Section 1983. But what appellant has not addressed, but what Your Honor did address, is that the Dewberry case stands alone in this presumption. Showing that congressional intent was not to make Your Honors or any federal judges the arbiters of these types of decisions. There is not a single other court throughout the 50 states which hold consistent with Dewberry. The Northern District of Illinois, the Southern District of New York, the Northern District of New York, the District of Hawaii, the Eastern District of Michigan, and the District of Maryland have all ruled consistently with the Middle District of Florida that LEOSA does not create a right under Section 1983. To be clear about what you're arguing, are you arguing that nobody who claims to be a qualified retired law enforcement officer can enforce their rights in federal court under the Law Enforcement Officer Safety Act? No, Your Honor, that's not what I'm arguing. What I'm arguing is that the courts are required to follow the law. But who can? Give me an example of somebody who could. The only people who could bring a claim are those under the statute which are qualified retired law enforcement officers and carry the identification required under Section D. That's what the law says. Some state prosecutes them for having a firearm even though they've got the card. Your Honor, I would agree that the only time that LEOSA would arguably come up is that that officer would have to have been arrested in some other state and presented a warrant. Or warned. Or warned. Correct. Correct, Your Honor. What about if the question came up, the police department says, well, this person didn't retire in good standing. And the police officer says, oh, yes, I did. Can that officer enforce their rights in federal court? No, Your Honor, the law is clear that if they don't have the identification card together with meeting the definition under LEOSA of being a qualified retired law enforcement officer, they couldn't enforce their rights in federal court. As Judge Anderson correctly pointed out. Your argument is they don't have a right to the identification card. Correct, Your Honor. That's exactly what I'm saying. But as Judge Anderson correctly pointed out, to address Judge Martin's concern, their redress would be to bring an action in state court or an administrative proceeding determining that the agency's decision was invalid. And that's what they should do, Your Honor. Assuming state law recognizes the right to have the identification card. Correct, Your Honor. But if it doesn't, I would assume that there's an administrative proceeding that they could bring in order to address that. To the extent that you're saying that the federal law gives them a state law right to have that identification card, and if they've got a quarrel about it, they go into state court, you've just given away your case. No, Your Honor. All right. So they don't have a right under this statute, federal statute, to have the identification card. Correct. That's exactly what I'm saying. I believe the question, and maybe I apologize if I misunderstood it, but I believe Judge Martin was asking whether or not they could bring an action in federal court. And it's the position as well as the position of all of these districts that they could not. And I assume it's your position that they couldn't bring anything in state court to enforce this federal statute involving an identification card. Correct, Your Honor. They could address whether or not the decision, I assume, in an administrative proceeding, and I don't have at my rights some sort of a redress, Your Honor. You and I apparently have different views of the anti-commandeering doctrine. My view is, and I thought you'd tell me if it's wrong, is that the federal government can't force the states, state courts, state administrative, executive departments, to do its bidding for it to help it, the federal government, run a federal program. They can bribe them into doing it with saying these appropriations are conditioned on that. They can forbid the states from doing certain things under the Interstate Commerce Clause and other things. But they can't say, we've got this program, you've got to allow your state courts, or you've got to allow federal courts to implement it on your back. Correct, Your Honor. But to me, your answer, they could go into state court and vindicate their right to a card. What right is what I'm asking? Your Honor, I stand corrected. I believe, ultimately, in state court, we would have a different argument similar to what Your Honor is bringing. Well, does state law provide for identification cards? In this state, there is a statute that addresses the identification card. And that provides what? It provides certain parameters within which they are entitled to an identification card. The city of Neptune Beach has its own policies and procedures. To identify them as former law enforcement officers? Correct, Your Honor. Or current, I guess. Former law enforcement officers, at least. Is that enacted for and administered for the purpose of assisting the federal statute? No, Your Honor, not to my knowledge. Well, other than perhaps getting out of speeding tickets, what function does that card serve? Your Honor, as I sit here today, I would assume that that card has some bearing on some... Non-professional courtesy. Professional courtesy. That's exactly the word I'm looking for, Your Honor. That would be my guess. As a former assistant state attorney in this circuit, I would know that that's what my former assistant state attorney, that same professional courtesy, that's what that card has entailed. Well, let me just tell you, that ends when you go on the federal bench. I understand, Your Honor. It is a serious breach of ethics for a federal judge to show an identification unless one is demanded for some other purpose. I understand, Your Honor. It doesn't work on the civil side of the bench either. I tell people the difference between a prosecutor and a federal judge is the judge has to pay his speeding ticket. Okay, so this is interesting, but . . . Go on, Your Honor. Can I just finish out? Sure. Okay, so you say a retired law enforcement officer can't litigate whether or not they retired in good standing in federal court. They can't clarify that in federal court. Can they do it in state court? Your Honor . . . I mean, in enforcing their rights under LEOSA. Not under LEOSA, Your Honor. I think the law is clear. The discussion I was having with Judge Carnes is addressing the state statute, and that would be . . . He's talking about the ID. I'm talking about the state says you didn't retire in good standing, so you don't meet the definition of a qualified law enforcement officer. Your answer is the person who's trying to enforce their rights under LEOSA can't come to federal court to get a declaration on his or her status and can't go to state court to clarify his or her status. If there is a state law giving him that right, which there may or may not be that hadn't been briefed . . . It's my contention that they couldn't go to federal court because they wouldn't have both . . . I understand that. What about state court? Your Honor, if there was a statute and there is in this state that addresses the identification . . . I'm not talking about identification. I'm talking about the question. She says, I retired in good standing. The state says, oh, no, you didn't. And she wants the court to declare that her position is right, that she retired in good standing. Can she go to state court to enforce her LEOSA rights on that question? No. Okay. Your Honor, I think . . . The reason I take it your position is that she has no LEOSA right to a statement from the state to the federal government that she retired in good standing. Correct, Your Honor. Because to the extent that one is implied, it violates the anti-commandeering doctrine. Right. In fact, the issue is that she's not entitled or he, she in this context, is not entitled to the identification card at all. Appellant has cited no cases that address the fact that there is an entitlement to the identification card. That's the Hobson's choice. The issue in this case is in order for appellant to be in federal court, they have to show that there is a federal right that is being violated. As we've discussed at length in the briefs, the blessing analysis is what the courts must undergo. The third factor of the blessing case, which is what the lower court relied on, the third and the first factor states that in order for a federal right to be exhibited, there must be an unequivocal obligation on the part of the states to act. There is no obligation on the part of the states to act in this situation. I don't know that I disagree with you about the idea. I'm just trying to figure out what rights do you say a qualified, retired law enforcement officer can enforce under this statute? Give me an example. Until they meet the parameters within the statute, they can't. LEOSA was intended to benefit not all qualified, retired law enforcement officers. It's going to happen. It's happened here where one person says, I meet the definition of the statute and I want to enforce my rights, and the state says, no, you don't. Where do they go to enforce the rights? They don't have a right under LEOSA at that point. Once the state determines that they haven't met the parameters, it is the state's discretion under the Tenth Amendment, under the Prince case and its progeny that this is, as the court has addressed, the anti-commandeering by definition. The states are not required to issue the identification card. I would point to the fact that if you're offered to read the statute itself, in Section D it's very interesting that in Section D, Section D uses terms like person and individual. Nowhere within Section D will your honors find any- That's the identification section. Which is where we are. It doesn't use the term qualified, retired law enforcement officer at all. That's defined in Section C. Correct. But Section D doesn't use the term qualified, retired law enforcement officer. And in the Rosello v. United States case, the Supreme Court at 464 U.S. 16, 1983, specifically stated, and the holding is, where Congress includes particular language in one section of a statute, but omits it in another section of the same act, it is generally presumed that Congress acted intentionally. By not using- Let me ask you this. So a qualified law enforcement officer is all squared away. They've got their ID, and they're carrying a concealed weapon in Virginia, and they drive across the state line to Maryland. They get stopped. They get arrested for carrying a concealed weapon when they're not supposed to. Does that person have standing under LEOSA to enforce their rights? That person would. That case is the case which I believe was just decided last week. So the answer is yes? There is a purpose to be served by this statute. Correct. It does protect a person. An officer is protected. In most states, unlike Florida, for reasons that aren't readily apparent to me, Florida reasons aren't readily apparent to me, cooperate because they want their officers, if they're in another state, to be able to be armed. Correct. But Florida apparently does not want to cooperate and therefore doesn't have a system of providing these cards voluntarily that is consistent with the requirements of LEOSA. So its officers, they move, let's say D.C. There's no jurisdiction I know of that's reportedly more hostile to firearm rights or to carrying firearms than D.C. And you have an officer who moves up there, retires, and wants to be close to the kid. He's of that age. And he also wants to carry a firearm. But Florida doesn't want to accommodate him and doesn't have a system set up to provide its officers with the kind of identification cards that will allow them to do that. And that's not my image of the Florida legislature, for example, from what I've read about some of the statutes that are enacted. It's not known as indifferent to law enforcement officers' rights and interests. How did we get here? Your Honor, I can't comment on the legislative intent of the Florida legislature and why they made the determinations as to why they do what they do. I can only address the federal intent and congressional intent in addressing that. But does it take legislation? Couldn't the city of Neptune Beach set up its own program to provide these ID cards? The city of Neptune Beach does have its own program. That's why we're here, Your Honor. But it's not consistent with LEOSA because of, for example, the 10-15 year discrepancy. The law is clear that they don't have to subscribe to the federal system. I'm not talking about that. It seems to me like, well, that's policy. I'm going to stay away from it. But it's just odd that Florida is here arguing this position. I understand. You might arguably infer from my questions, I think you're probably right on the law. Sometimes it's amusing to try to figure out why we're here on this kind of thing. I'll stop my assumptions here. Anything else? Your Honor, just in conclusion, I think it's clear that it was not—we've talked about some intent. I think it's clear that it wasn't the congressional intent to flood the federal court system with these types of cases to become the arbiters of whether or not an identification card was properly denied, especially in instances where that agency believed that the individual did not meet the mental qualifications or did not retire in good standing. Thank you, Your Honors. I appreciate your time. All right. Mr. DiMaggio, I promised you five minutes. If you need it, you can take it. Your Honor, the statute does not require the state or the municipality in issuing the card saying somebody worked here to certify whether or not they were qualified, how long they worked, and all that. All I can say is they work there. There is a Florida statute that provides for retired officers to receive an ID. It's 112.193 of the Florida statute. 112.193. Yes, sir. That was cited, I believe, in our reply brief. And it was enacted before LEOSA, and it's simply a statute that provides when somebody's been working somewhere, an agency can issue them a—  Why don't you sue under that statute? Because it says may. It says may. It doesn't say shall, so I don't believe a mandamus would be appropriate there, Your Honor. And then, after LEOSA was passed, the Florida legislature enacted 934.132, Florida statutes, which gave the Commission on Criminal Standards the ability to promulgate some firearm regulations to meet the firearms training, and that's at Florida Administrative Code 11B-27.014. Neither one of those speak to the ID requirement, and I think it's probably pretty telling about that because there's nothing onerous about simply having an agency say somebody worked here. They're not certifying it. And if you look at the qualified law enforcement officer parameters, some of those traits in there are kind of mutable traits. And I think you're right that probably the most commonplace this would come up if there weren't denials of just getting a photo ID would be the arrest scenario that Judge Carnes talked about. But I submit to you that if she had the card and she had the firearms training and she got pulled over drunk, guess what? She doesn't meet the statute anymore. So what we're saying is for the time being, she meets the requirements of the statute, and she simply needs the card. And what's being argued here is kind of what was argued by the defendants in Dewberry, which is this is some precondition to a right, and thereby enforcing this precondition, getting in the way of the right. And that's why I started that analogy about the voting rights cases. Last, I just want to harp on this because I know there is a major concern about anti-commandeering. If you look at Dewberry and the opinion itself, they talk about anti-commandeering at page 1057 of the opinion. Dewberry didn't have to address it because the D.C. Circuit is subject to the . . . They're federal. Well, they didn't address it for two reasons. They note that, but they also note that according to the complaint, the district and the county voluntarily provide the training and have established a procedure to obtain the historical information about the appellants. And they cite another case there from their circuit called Lamont v. O'Neill, which because the state or the district in that was able to voluntarily engage in the program, then they've already done it. They've kind of in essence waived the commandeering thing there. And that's my major argument here is they're voluntarily participating in this. They are. And it's not like passing this actually was any more of a burden on them because we know firearms training existed before this statute was passed. And I think to rule any other way would render this statute a nullity. Why do we have it on the books? Okay? There's no purpose to have it if they can simply say, I'm not going to give you a card because you worked here. And remember, it ain't saying you worked here, you were a great officer, whatever. You worked here. That's all it has to say. And this came up when they were passing this statute. There were some concerns about what are its effects on federalism. Some people raised amendments. You can opt in, opt out, things of that nature. And this thing passed by an overwhelming majority because it makes sense. These people need to be protected. They put their service in, and they may be subject to criminals or somebody coming back on them. And I know I haven't even addressed whether or not it creates a right, but this is clearly the court's concern, and I stand on Dubair, and I think the 11th Circuit's precedent, and Schwerer versus I believe it's Cox, would show that there's a right in this statute. But when Congress passes a law that says notwithstanding any state law and there's clear requirements set out, and it is in mandatory terms, the states need to follow it. And in particular, when there's not really anything the states have to do in the facts of this case other than issue a card saying somebody worked there, that's not anti-commandeering and it's not a Tenth Amendment violation. So for those reasons, we'd ask that the district courts order to the contrary. Thank you. Thank you, counsel. I appreciate the argument on both sides. We will take case under submission, stand in recess until tomorrow morning. All rise.